

FILED
MAY 29 2013
U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
*********************************
                              *
                              *
JULIO VILLARS                 *
                              *
        Plaintiff Pro Se,     *
                              *
                              *
V                             *
                              *
                              *
ERICK HOLDER                  *
UNITED STATES ATTORNEY GENERAL; *    CASE No._____
FBI SA WILLIAM ROECKER;       *
FBI SAC ROBERT D. GRANT;      *
ASAC RICARDO PAGAN;           *
FBI AD WAYNE MURPHY;          *
DEA SAC JOHN RILEY;           *
DEA SA ROBERT BELLA;          *
U.S. ATTORNEY PATRICK FITZGERAL; *
AUSA STEPHEN KUBIATOWSKI;     *
UNKNOWN AUSAO IN THEIR OFFICIAL *
CAPACITY                      *
DEA, FBI, FPO and the DHS/ICE *
                              *
THE UNITED STATES             *
                              *
                              *
        DEFENDANTS            *
                              *
*********************************
```

**CASE No. 13-363 C**

## COMPLAINT FOR BREACH CONTRACT;
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;
## FIFTH AMENDMENT U.S. CONSTITUTION "TAKING CLAUSE"
## And DAMAGES

1

## GENERAL FACTS GIVEN RISE TO THIS ACTION

Julio Villars "Plaintiff allege as follow:

1.     Between February and March 2008 while in ICE detention Plaintiff contacted the

Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA) first

with the help of Lt. Lukas at McHenry County Jail, Woodstock, Illinois and later via U.S. Mail

2.     Plaintiff offered his services as an Informant, in exchange, Plaintiff requested relief from

deportation in a form of the "S-VISA" or Informant Visa to later become legal permanent

resident "LPR" and to be afforded with personal safety.

3.     The FBI, DEA and the Federal Prosecutor Office (FPO) responded to Plaintiff letter by

sending FBI Special Agent William Roecker and Unknown United States Attorney for the

Northern District of Illinois (NDIL) to debrief Plaintiff at McHenry County Jail where he was

detained by Immigration and Custom Enforcement (ICE) awaiting deportation.

4.     The government agents promised to get Plaintiff released from custody and help him

with his "S-VISA" and later help Plaintiff to become a legal permanent resident as they stated

"because you are doing the right thing in helping the government in providing the information

and helping with the investigation and prosecution"

5.     The agents make affirmative assurances to Mr. Villars that if he fully cooperated with

law enforcement and federal prosecutors, he would not be deported

6.     During the curse of the investigation the FBI and the DEA made payments to Mr. Villars

for services and expenses relate to the investigation from the agencies PE/PI funds Mr. Villars

was never afforded a copy of any of the paperwork he estimated he received around $25,000.00

in 11 months from December 2008 to March 2010, but no payments from March 2010 to

2

October 2010 Mr. Villars allege that for this seven most the government owns him $15,000.00 For expenses and payments for his services

7.    Under OCDETF, FBI, and DEA directions plaintiff used his trucking company to transport drugs and money, record incriminating conversations, made drug buys, used wire and video recordings at the transactions not counting the hundreds of phone calls

8.    Mr. Villars seek compensation/damages and relief for defendant's (I) breach of its implied-in-fact Contract for informant services (II) breach of fiduciary duty to provide just and adequate compensation (III) for the taking of his business "trucking company" (IV) breach of their agreement of non-deportation and safety and  (V) for breach of the implied duties and covenants integral to the implied-in-fact contract

9.    Mr. Villars seek to prove that the FBI, DEA, FPO, DOJ, DHS and their respective officials acted within the scope of employment and under the color of federal law, defendants had and have knowledge of the contract and are bound after approving and ratifying both individually and institutionally the used of Mr. Villars as Active Informant (FBI "CHS" confidential human source)(DEA "CI" and material witness) for more than two years retaining the benefits of the investigations, and are liable for the danger that Mr. Villars is now subjected after defendant reneged to provide protection in violation of their duty to protect, and in violation of their agreement to protect him not only under the contract but under statutes, the United States Constitution and international treaties

## JURISDICTION AND VENUE

11.    This court has jurisdiction over the subject matter pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (1) and the Fifth Amendment cl. 4 of the United States Constitution

## PARTIES

12.     Plaintiff, Julio Villars a 42 years male, Honduran national that reside in the Chicago,

Illinois area since 1995 and worked as informant for the Chicago Division DEA group 44 / FBI

CE-5 / CPOT under the umbrella of the DOJ, from July of 2008 until October of 2010

13.     Defendant the UNITED STATES OF AMERICA thru its agencies FBI, DEA, FPO

And Agents took and controlled Mr. Villars trucking company without just compensation

breached the non-deportation and safety implied-in-fact contract, reneged to pay Mr. Villars for

services performed, for his relocation, and expenses incurred due to his work as informant, and

has assumed fiduciary responsibilities to the Plaintiff.

## STATEMENT OF FACTS

14.     On February of 2008 while in ICE detention waiting to be remove to Honduras Mr.

Villars wrote a letter and offered his services as informant to federal law enforcement agencies

"LEA's" FBI letter was mail from McHenry County Jail directly to SAC Robert D. Grant, and

DEA letter was mail to SAC John Riley, in exchange Mr. Villars requested an S visa 'informant

visa" to later be able to become legal permanent resident (see the responsible cooperator program

Nov. 29, 2001)

15.     Mr. Villars was debriefed by the Federal Bureau of Investigation FBI and the United

States Attorney for the Northern District of Illinois represented by FBI Special Agent William

Roecker and an unknown Assistant United States Attorney

16.     At the debriefing Mr. Villars was promised by SA Roecker and the unknown Attorney

that the United States government would keep him away from harm, they expressly promised

Mr. Villars that he would never had to worry because safety is always the government priority

and in case anything goes wrong the government would pay for his relocation, and even if

required he would get a new identity and to this dated they have not complied with any of the promises above mention

17.      SA Roecker and the unknown Attorney made affirmative assurances to Mr. Villars that if he fully cooperate with law enforcement and federal prosecutors, he would not be remove to Honduras (Non-deportation and LPR promises)

18.      Mr. Villars explained that for him to be able to lure the drug trafficking organization "DTO" he would need to use his trucking company because he never sold or buy drugs but was offered before to transport drug from this groups

19.      Defendants SA Roecker and the Attorney enter into contractual agreement with Mr. Villars and the government later ratified the agreement in that:

     A.      Mr. Villars would be granted Legal Permanent Residence;

     B.      pay him for expenses he could incurred during his informant work;

     C.      To pay him for his services at least $5,000.00 at the end of each case or lump sum in case of a situation in which a big seizure occurred, and to compensate him for any loss he can incurred in furtherance of his services as CHS;

     D.      To protect Mr. Villars personal safety, and if required they would provide him with a new identity and they would pay for his relocation

20.      But they would need to get the authorization from the Federal Prosecutor Office and that's why the presence of the unknown AUSA was required at the debriefing

21.      Defendants sought approval from higher up officials from FBIHQ, DOJ and the DHS in Washington, DC as stated by SA Roecker and the Unknown Attorney in the meeting at McHenry County Jail

22.      Approval for the Use of Mr. Villars as a CHS confidential human source, was directly

from the FBI Assistant Director, Directorate of Intelligence Mr. Wayne M. Murphy

23.    Mr. Villars advised the Agents that he was already order to be remove from the United States and ICE would remove him at any time, the unknown AUSA advised Mr. Villars to appeal his removal order in order for them to get the authorization for his release and use as informant

24.    As requested by the FBI, Immigration and Customs Enforcement 'ICE" Mr. Villars was released from detention and granted "Deferred Action" to Mr. Villars on July 1, 2008 Approved by Unit Chief Roger Applegate(see Re: Exercise Prosecutorial Discretion)

25.    These prove the knowledge that ICE/DHS had at the time of the agreement between Mr. Villars and the FBI, DEA and FPO "government"

26.    Mr. Villars allege that, a higher up official with ratifying authority had actual or constructive knowledge of the unauthorized promises that low level agents offered to Mr. Villars and acquiesced to the unauthorized promises allowing Mr. Villars to be released from detention

27.    Mr. Villars further alleges that for him to be released from ICE detention and later be authorize to become CHS an approval from a higher up official with the DOJ was requested see AG Guidelines for the use of CHS by the FBI, in this case authorization for the Chief of Federal Prosecutor Office Mr. Patrick Fitzgerald, FBI SAC Robert D. Grant and Mr. Murphy the Assistant Director, Directorate of Intelligence FBI was requested as AD Murphy was responsible for source validation this prove that the FBI, DEA and USAO received Mr. Villars letter requesting the s visa, and enter into contractual obligations for non-deportation with Mr. Villars

28.    Mr. Villars was used with Defendants full knowledge and his contract was institutional ratified by the FBI, DEA, FPO, the DOJ and its officials individually ratified the contract, or had imputed knowledge and acquiesced to the unlawful promises to Mr. Villars

29.    The FBI, DEA, FPO and ICE (the government) institutionally ratified the contract by

actively continuing to accept the information and services provided by Mr. Villars for more than two years in which time Mr. Villars authorization to remain in the United States was renewed 3 times (see attachment copy of I-765 application and deferred action authorization)

30.     Mr. Villars allege that he should be entitled to the benefit of the bargain with the government, at any time the government its official or agents advised Mr. Villars that they rejected his proposal stated in the offering letter to be precise Mr. Villars request for non-deportation, instead ICE, FBI, DEA, FPO ("the Government") released Mr. Villars from detention actively seeking his services and labor and by that, accepting to be bound by the agreement

31.     The FBI, DEA and Federal Prosecutors continued with the sting operations, arresting targets, prosecutions and new investigations knowingly that Mr. Villars was expecting to be afforded legal permanent resident "LPR" status in reliance on the government acceptance of the condition stated on Mr. Villars letter and by the promises made to him by the Agents

32.     Mr. Villars offered his services and the government accepted to be bound by the agreement through its conduct where the government made no objections or counteroffer to Mr. Villars terms before he started providing his information and performing services

33.     It was not until November 2010 more than Two years after that the government reneged to provided Mr. Villars with his legal status "LPR" in the United States also reneged to provided for his safety and payment for relocation and services performed under the contract

34.     Mr. Villars allege that he would not provide the information or render any services putting his life at risk, without the assurances of the corresponding benefits by the FBI, DEA and the FPO ("the Government") to remain in the United States safely

35.     Defendants after accepting the law enforcement benefits of the information and the

active services of Mr. Villars, Defendants have the duty to live up to the contract and not to deport him to a country were harm or death await for him after he perform services under the contract and promises of safety

36.     Mr. Villars allege that the United States thru its agencies FBI, DEA and FPO took his trucking company for public use without just compensation in a coercive way after Mr. Villars started asking for his LPR status SA Roecker just answer to keep the bosses in Washington happy if not Mr. Villars could loss his Immigration benefits and would have to go back to detention and later to be remove to Honduras

37.     Mr. Villars allege that if there was no implied in fact contract with the FBI, DEA and FPO, "the government" his cooperation was not voluntary, and for that Defendants interfered with Mr. Villars rights of property interest

38.     Mr. Villars allege that the government use of his trucking company constituted a taking of property that is entitled to compensation, The government physically invaded Mr. Villars property by installing a tracking devised to his semi-truck and monitoring his business telephones, and used his private vehicles for public interest

39.     Mr. Villars ultimately loss his company and equipment, as he couldn't run his business when his "deferred action" (work authorization by ICE) was revoked without notice, he was later detained as material witness from November 10, 2010 until January 27, 2011 for the United States "government", his semi-truck was repossessed, his landlord evicted his family causing Mr. Villars irreparable loss of personal belongings, company records, emotional distress, and humiliation not only to him but to his family

40.     Mr. Villars continued participating under this condition, because he was advised by his handler that if he stopped providing services and cases the government would not provide for his

safety even after he had received death threats related to his active participation on the investigation and arrest of defendants in the Diaz case (see attached United States v. Jose Diaz et.al 10 cr 199) in which one of the defendants has close ties with Mr. Villars family and friends

41.     The government ultimately arrested at least 30 suspects, recovery $750,000.00 in cash and seized high quantities of drugs heroin, cocaine, crystal meth and marijuana (see attached list)

42.     The government has tortuously breached the implied-in-fact contract and the implied covenant of good faith and fair dealing the government has failed and continuing to fail to protect Mr. Villars from retaliation (see 18 U.S.C. §§ 1512, 1513 and Art. 24 TOC United Nations Transnational Organized Crime)

43.     Mr. Villars reported the threats to his life to FBI SA Roecker since August 6, 2010 and to AUSA Kubiatowski during the material witness hearing were Judge Demlow ask him to provide Mr. Villars with help to avoid deportation and provide for his safety

44.     The government has failed to protect Mr. Villars from arbitrary detention (see 18 U.S.C. § 3142 (f)(2)) Mr. Villars endured 84 days at Ozaukee County Jail, Port Washington, WI where he was held as material witness and endured numerous strip searches, isolated detention, verbal and physical abuse as every time Mr. Villars was transported to court he was shackled from legs, belly chained and handcuffed the shackles from his legs were in place from 5:30 AM until he came back from court hearing between 5:30 and 8 PM

45.     The FBI, DEA, and FPO have failed to notified Immigration and Customs Enforcement ICE that Mr. Villars removal to Honduras would jeopardize his life and wellbeing after receiving death threats from DTO members with ties to Honduras organized crime

46.     Mr. Villars further allege that the Government deceived him about the terms of his Immigration status in a manner that constitutes an abuse of the legal process under

18 U.S.C. § 1589 (a) (2) (3), intentionally breaching the duty of good faith and fair dealing implied in its contract with Mr. Villars

47.     Defendants had bound them-self to provide protection to Mr. Villars after putting his life and safety in jeopardy, by promising not to remove him to Honduras

48.     Mr. Villars contacted SA Roecker on March, 2011 and requested his help, as to how to file a report of the retaliation and threats against him; SA Roecker told Mr. Villars that if he went to police he would be arrested and then remove to Honduras, but that the SA Roecker would pay him a lump sum "money" for his relocation in Honduras and for what they owned Mr. Villars, but after that he would need to arrest Mr. Villars and turn him to Immigration authorities SA Roecker asked Mr. Villars to think and to later call him

49.     Mr. Villars allege that he didn't took the money offered by SA Roecker because even if he accepted the money his life would still in jeopardy in Honduras a risk that he couldn't take, the FBI, DEA and the FPO are statutory obligate to provide Mr. Villars with protection under 18 U.S.C. § 1513 which is a federal offence and the stated-created danger doctrine under the Fifth Amendment of the U.S. Constitution

50.     On October 3, 2012 Mr. Villars filed an administrative claim for breach of contract and FTCA claim with the FBI, DEA, USAO for the NDIL Eastern Division, and the DHS The FBI and the DEA denied the claim and the USAO never answer Mr. Villars claim, neither the DHS Department of Homeland Security

51.     Mr. Villars allege that the FBI denied his claim under FTCA in that a claimant must demonstrate negligence or a wrongful act or omission on the part of federal employee acting within the scope of employment, but making an omission as to why his contract claim was denied see attach FBI letter in response of administrative claim sign by Christopher R. Donovan

Assistant General Counsel

52.     Mr. Villars allege that in the case of his claim, the DEA did not specified why his claim was being denied, the letter was sent to Mr. Villars but the response of the claim was directed to a "Mr. Reiss" see attach response letter dated January 16, 2013 sign by Associate Chief Counsel Civil Litigation Karen K. Richardson

53.     Alternatively Mr. Villars allege that in absence of a contract he was misled and in effect coerced into cooperation with the FBI, DEA and the FPO "the government", and because these misleading promises of non-deportation, Legal Permanent Residence and personal safety Mr. Villars accepted to render the services and participated in the investigations by buying drugs, transporting drugs and money, participated in control deliveries, making and recording hundreds of phone calls, introducing undercover Agent to the targets, providing information and identifying targets all these predicated on assurances of legal permanent residence, safety and compensation

54.     Mr. Villars loss his trucking company because of the government breach, and approximate of 25,000.00 for truck and miscellaneous plus $14,000.00 for loss of income now he also have to endured retaliatory death threats and future harm at the hands of drug trafficking organization, if he is obligate to return to Honduras, or if not protection is afforded to him, harm or death wait for him, he is sure that DTO's would catch up with him

55.     Mr. Villars allege that his only purpose to enter into contract with The United States government was to reap the Immigration benefits offered in the Immigration and Naturalization Act, 18 U.S.C. §1101(a)(15)(S) get the S VISA and become legal permanent resident

56.     Mr. Villars never asked to be monetary remunerated, it was the government who offered him the money, they offered to pay him $5,000.00 at the end of each case from the PI/PE

plus 25% of all money seized with his information, the government seized $750,000.00 but never pay Mr. Villars the corresponding $187,500.00

57.     Defendants DHS/ICE employees issue a detainer for Mr. Villars after his arrest for traffic violation, and without any review revoked Mr. Villars deferred action with the argument that the FED's didn't need Mr. Villars then detained him for 30 days

58.     Defendant FBI SA Roecker after talking with Mr. Villars by telephone told Mr. Villars that he could not do anything to protect Mr. Villars because it was ICE discretion to avoid Mr. Villars removal in total disregards of the contract and promised safety

59.     Mr. Villars requested help from ICE Deportation Officer Lupiani to avoid deportation and did requested a credible fear interview, in response DO Lupiani told Mr. Villars that he couldn't do anything and to try to get help from FBI SA Roecker his case handler

60.     Defendant AUSA Kubiatowski denied protection to Mr. Villars after plaintiff requested the Court to put in the record that Mr. Villars has been victim of retaliatory death threats because of plaintiff work as informant Judge Demlow directed AUSA Kubiatowski to investigated the threats and help Mr. Villars to avoid deportation but Defendant Kubiatowski only answer was that the FBI wouldn't help Mr. Villars and that the AUSAO couldn't do anything either

61.     Mr. Villars allege that he had contact SAC's Grant and Riley, offering his services and these government officials had express actual authority to make and approve payments up to $25,000.00 quarterly to informants, and had the ability to request the 25%, and plaintiff relief in form of s visa or certified a U visa application in the case of Mr. Villars a victim of retaliation of Informant

62.     Mr. Villars allege that in sending FBI SA Roecker and the Unknown AUSA to debrief

and making the offers to Mr. Villars the SAC's Grant and Riley and United States Attorney's Fitzgerald approved the non-deportation and legal permanent residence contract and sought authorization from FBI Assistant Director Wayne at FBIHQ and the DOJ for the release of Mr. Villars from detention as SA Roecker and the Unknown AUSA couldn't accomplish the release of Mr. Villars without the authorization of FBIHQ, DEA SAC, FBI SAC or the United States Attorney's Office or the Chief of the Federal Prosecutor office and most important DHS/ICE

## COUNT ONE

## BREACH OF CONTRACT

63.    Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 62 as if set forth herein in full.

64.    Plaintiff and Defendants entered an oral contract for the services of Plaintiff as Confidential Human Source "CHS" in which Plaintiff provided the services for more than Two years, in exchange the Defendants and the United States government would Provide Plaintiff with legal permanent residence in the United States

65.    When Mr. Villars requested that the "government" provides him with the full copy of the admonishment SA Roecker fail to produce the paper work, defendants only provided Mr. Villars with the last 3 pages of the document, and stated that it was not need for Mr. Villars to have the full document, the same for the copy of payments, and annual authorization

66.    Upon information and belief, the government has breached the agreement, by failing to compensate Mr. Villars for those services, by failing to provided Mr. Villars with legal permanent residence, in that the government used Mr. Villars information and services to indict at least 30 people, seize money, and seized  high quantities of drugs

67.     The government and its officials intentional failure to comply with the terms of the agreement constituted a bad faith and a material breach of the agreement

68.     Defendants breached the contract by reneging, to grant Plaintiff such relief from deportation after Plaintiff provided the information and services

69.     As a result of Defendants breach of the contract with Plaintiff, Plaintiff have suffered substantial injury, and is entitled to actual, incidental and consequential damages, including cost and fees

## COUNT TWO

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIRDEALING)

70.     Plaintiff is informed and believes and thereon alleges that, at all the times herein mentioned, each of the Defendants sued herein was the Agent and employee of the United States agencies and was at all times acting within the purpose and scope of such agency and employment

71.     The covenant of good faith and fair dealing is implied when parties entered into contract

72.     As a result of the actions of Defendants, and each of them, set forth hereinabove, said defendants have violated the implied covenant of good faith and fair dealing contained in the agreement against said Plaintiff herein, and as a result thereof, Plaintiff is entitled to damages as prayed

73.     The actions of said Defendants, as hereinbefore described in violation of said implied covenant of good faith and fair dealing, as a result of Defendants breach plaintiff have suffered substantial injury, and is entitled to actual, incidental, and consequential damages, including cost and fees

## COUNT THREE

**(TAKING CLAUSE FIFTH AMENDMENT U.S. CONSTITUTION)**

74.      Plaintiff is informed and believes and thereon alleges that, at all the times herein

mentioned, the FBI, and the DEA took Mr. Villars property with the meaning of the Fifth

Amendment of the United States constitution

75.      As a result of Defendants taking and effectively controlling Mr. Villars private

properties interest, he completely loss his trucking company, Defendants deprived Mr. Villars for

running his business for profit, and in that the defendants interfered with Mr. Villars property

rights in violation of his Constitutional rights

76.      The actions of said Defendant, as hereinbefore described were in violation of the Fifth

Amendment of the United States Constitution "taking clause" and have cause Mr. Villars

injury, and is entitled to actual, incidental, and consequential damages, including cost and fees

## COUNT FOUR

**(Conspiracy to Breach Contract And To Interfere With Contractual Relations Against ICE/DHS)**

77.      Plaintiff hereby incorporates by reference the allegations contained in

paragraphs 1 through 62, inclusive.

78.      As alleged in the complaint, Defendants agreed and knowingly and willfully conspired

between themselves to enable the government to breach his contractual obligations and

deliberately interfered with the contractual relations between Plaintiff and the government and

did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and

agreement as alleged above.

79.      As the proximate result of the wrongful acts herein alleged, Plaintiff has been generally

damaged in a sum to be proven at trial.

80.      Further, at all times herein alleged, Defendants knew of the provisions of Plaintiff's

Agreement with the government. Notwithstanding this knowledge, the Defendants intentionally,

willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress

Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages in the sum of One

Million Dollars ($1,000,000).


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court for the following relief;

81.      The actions of the Defendants complained of herein be adjudicated, decreed, and

declared a breach of defendants obligations under the contract, breach of the covenant of good

faith and fair dealing, and the taking of property claim

82.      The Defendants pay damages in an amount to be determined at trial for these

violations on an amount not less than $2,250,000.00

83.      Defendants pay prejudgment interest to Plaintiff on these damages

84.      The Court grant such other and further relief as the Court deem just or equitable


Respectfully submitted,


Date: May 16 , 2013

JULIO VILLARS
2307 NORTH MASON #2
CHICAGO, ILLINOIS 60639
PH. No. 224-223-0205

U.S. Department of Homeland Security
500 12th Street, SW., 6th Floor
Washington, DC 20024



**U.S. Immigration
and Customs
Enforcement**

JUN 26 2009

Julio Alberto VILLARS-Salazar
A94325302
c/o Federal Bureau of Investigation
Washington, DC 20535

Julio Alberto VILLARS-Salazar:

This is to notify you that you have been placed in "Deferred Action" for a period of one year from the date above. It is this agency's decision to place you in deferred action because of the information provided by the Federal Bureau of Investigation.

Deferred Action will allow you to remain in the United States until it has been determined that the need for this type of action is no longer warranted. Keep in mind that deferred action does not preclude this agency from revoking this decision should you violate the terms and conditions at any time.

Deferred Action does not confer any immigration benefit upon you nor is it in any way a reflection of your immigration status. Should you depart the United States, your authorization will be terminated.

You are eligible to apply for employment authorization in accordance with 8 CFR 274a.12(c)(14). In addition, you will be required to report periodically to your case agent. Please contact your case agent on the reporting schedule he/she will impose and for any questions you may have regarding this matter.

Sincerely,

Alexis Torres
Unit Chief, Investigative Support Unit
Investigative Services



**U. S. Department of Justice**

Drug Enforcement Administration

Office of Chief Counsel (CCL/DGR)

8701 Morrissette Drive

Springfield, Virginia 22152

*www.dea.gov*

JAN 16 2013

**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**

Julio A. Villars
2307 North Mason #2
Chicago, Illinois 60639

Re:  Your Complaint dated October 3, 2012

Dear Mr. Reiss:

This will acknowledge receipt of your complaint dated October 3, 2012. It appears that you are seeking compensation for the breach of your agreement as a confidential informant to receive payment for services rendered, to ensure your safety, and not to be deported.

Your administrative claim is hereby denied. *See* 28 U.S.C. § 2401(b). If you are dissatisfied with the denial of this claim, suit may be filed in the appropriate United States District Court no later than six months after the date of this letter. This is not to imply, however, that such a suit would be successful.

Sincerely,

*Karen Richardson*

Karen K. Richardson
Associate Chief Counsel
Civil Litigation Section



**U.S. Department of Justice**

Federal Bureau of Investigation

---

*Office of the General Counsel*                    Washington, D.C. 20535-0001

January 18, 2013

CERTIFIED MAIL 7011 3500 0001 0494 5116
RETURN RECEIPT

Mr. Julio A. Villars
2307 North Mason
Chicago, IL 60639

       Re:    Administrative Claim of Julio A. Villars

Dear Mr. Villars:

      Reference is made to the above-captioned Administrative Claim, dated October 3, 2012. The claim seeks damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, as well as for breach of contract under 28 U.S.C. § 1491 (a) (1). In order to recover damages under the FTCA, a claimant must demonstrate negligence or a wrongful act or omission on the part of a federal employee acting within the scope of employment. After reviewing the applicable law and the merits of the claim, this office has concluded that the claim should be, and hereby is, denied pursuant to 28 C.F.R. § 14.9.

      We are required by law (28 C.F.R. § 14.9 (a) to inform you that if you are dissatisfied with this determination, you may file suit in an appropriate United States District Court not later than six months after the date of mailing of this notification of denial. 28 U.S. C. § 2401(b).

      Sincerely yours.

*Christopher Donovan/600B*

Christopher R. Donovan
Assistant General Counsel

**- The Columbia Chronicle - http://columbiachronicle.com -**

## Meth bust in a crack city

Posted By Patrick Smith On 03-21-2010 @ 2:30 pm In Metro | 1 Comment

In a rare Chicago methamphetamine bust, Drug Enforcement Administration agents, using a wired informant, arrested three men and a woman on March 11 when the group attempted to sell a pound of the drug on the city's Northwest Side.

The arrest led to the discovery of two storage sheds containing about 200 pounds of marijuana and another 6 pounds of methamphetamines. According to DEA officials and public health experts, the 7 pounds of meth seized is a surprisingly large amount in a city gripped by heroin and crack addiction, but mostly free of a meth drug trade.

"It sounds pretty big for Chicago," said Larry Ouellet, director of community outreach intervention projects for the University of Illinois at Chicago. "If you have a bar graph [of drug use in Chicago], meth will be almost invisible compared to heroin, coke and marijuana."

According to Ouellet and Special Agent Will Taylor, a public information officer for the DEA, the meth seized may have been making a stop in Chicago before being moved to a different area. The city is often a midpoint between smaller surrounding cities and Mexico.

"We do see large seizures, but lots of times it's more of a transshipment point," Taylor said. "It's moving to another state or another area. [In Chicago], we don't see a lot of meth. When I say a lot, it's not comparable to heroin and crack cocaine that sort of plague this area."

Assistant U.S. Attorney Stephen Chan Lee said this was the first meth case he had ever handled. A source from the U.S. Attorney's office said methamphetamine cases in any of the federal courts of Illinois were exceedingly rare.

According to authorities, this case never would have happened were it not for the help of a "cooperating source," who worked with the DEA to arrange the purchase of a pound of meth from two individuals identified as José Diaz and Alberto Negron.

According to Taylor, who stressed that he could not speak about the specifics of the case, a cooperating source is typically someone who is not an employee of the DEA or any other law enforcement agency but helps to facilitate an arrest or drug seizure.

"It's usually someone who is cooperating on behalf of us," Taylor said. "Either they could be cooperating for...monetary reasons if they are getting paid, or they may have a pending criminal case against them ... and the prosecutor will take it into consideration that they helped us."

According to the criminal complaint filed on March 12, the source, who cannot be named for reasons regarding his safety, made recorded phone calls starting in February to Diaz and Negron to arrange the purchase of meth. The source is also said to have worn a recording device while meeting with Diaz and Negron, along with a man identified as Rigoberto Arreola-Cianca, who is accused of supplying the meth, and Seyra Villalobos, who is accused of storing the drugs in her house.

On March 11, the source, and an undercover DEA agent, met with Diaz, Negron, Arreola-Cianca and Villalobos for the final time, the complaint states. Diaz met with the source and the DEA agent outside, investigators said, and the agent showed Diaz $20,000 in cash to pay for the pound of meth. After speaking with Diaz briefly, the source allegedly entered Villalobos' house on the 3900 block of North Drake Avenue to see if the drugs were inside the house. He saw the pound of meth in Villalobos' house and then told them he was going to go back outside to get the money, the complaint alleges.

After he left the house, DEA agents rushed in, seized the drugs and arrested Diaz, Villalobos, Arreola-Cianca and Negron, according to the complaint.

Both Diaz's home and cell phone numbers had been disconnected when The Chronicle placed calls on March 17.

Villalobos worked as a waitress at La Estrella Bar on Milwaukee Avenue, agents said, where she met Arreola-Cianca, known as "El Gordo." She allegedly put Diaz, Negron and the source in contact with Arreola-Cianca so he could sell them the meth.

During the arrest, a receipt was found above the visor of Arreola-Cianca's truck for a storage shed at Lock Up Self Storage on North Kedzie Avenue, agents said. After confirming the shed was Arreola-Cianca's, investigators allege the agents searched the shed and found 200 pounds of marijuana and six pounds of meth.

The six pounds seized at the storage shed meant the DEA was able to take seven pounds of meth off the street in a few hours. No one was able to estimate how much of the drug passes through Chicago.

According to Ouellet, the 200 pounds of marijuana seized will not make a dent in Chicago's considerable marijuana market.

"It's a sizable arrest," Ouellet said. "But there's a lot of marijuana in Chicago. I'd be surprised if anybody noticed."
According to the criminal complaint, Diaz told agents that Villalobos' husband lives in Mexico and brings a lot of drugs into the United States. Taylor said despite the attention paid to homegrown meth-labs, almost all of the meth sold and consumed in the United States is smuggled from Mexico.

"The vast majority [of meth] that is consumed in the [United States], well over 90 percent originates from Mexico,"
Taylor said.

According to the criminal complaint, Diaz, Negron, Arreola-Cianca and Villalobos admitted to their involvement in the attempted drug sale. All four of them are still in custody. According to Lee, if convicted, each of them faces at least five years in prison.

---

Article printed from The Columbia Chronicle: **http://columbiachronicle.com**

URL to article: **http://columbiachronicle.com/meth-bust-in-a-crack-city/**

Copyright © 2010 The Columbia Chronicle. All rights reserved.

## OIA ADMONISHMENTS

(1) The CHS is only authorized to engage in the illegal activity as set forth in the written or oral authorization and not in any other illegal activity. This includes drug purchases, recording of conspiratorial conversations with subjects, transportation of drug funds, and identification of locations being utilized by individuals to store drugs.

(2) The CHS's authorization is limited to the time period specified in the written authorization.

(3) If the CHS is asked by any person to participate in any unauthorized illegal activity or if he/she learns of plans to engage in such activity, he/she must immediately report the matter to his/her Case or Co-Case Agent.

(4) Participation in any prohibited conduct or unauthorized illegal activity could subject the CHS to criminal prosecution.

(5) Under no circumstances may the CHS:

a.  Participate in an act of violence (except in self defense);

b.  Participate in an act designed to obtain information for the Federal Bureau of Investigation (FBI) that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search);

c.  Participate in an act that constitutes obstruction of justice (e.g. perjury, witness tampering, witness intimidation, entrapment, or fabrication, alteration, or destruction of evidence, unless such illegal activity has been authorized); or

d.  Initiate or instigate a plan or strategy to commit a federal, state, or local offense, unless such activity has been authorized.

```
To:  Division  From:  Chicago
Re:  270F-CG-129251, (09/04/2008)
```

## ACKNOWLEDGMENT OF OIA ADMONISHMENTS

      I hereby acknowledge that I have been advised of the above-listed guidelines and instructions and I fully understand all of the provisions, including the restrictions on the authorized conduct and the time period allowed for this specific conduct.

_Julio Villars JV_      _9-15-08_
CHS Signature or Initials      (Date)
(Payment Name or True Name)

_William S. [signature]_    _9/15/08_    _William G. Weckel_
Agent      (Signature)    (Date)    Agent      (Printed)

_[signature]_      _9/15/08_    _Scott Armstrong_
Witness      (Signature)    (Date)    Witness      (Printed)

---------------------------------------------------------------

FOR OFFICIAL USE ONLY:

CHS Symbol Number:_____
CHS File Number: _____

6

From: Julio A. Villars                                    November 11, 2012
        2307 North Mason # 2
        Chicago, Illinois 60639

To: Karen K. Richardson
      Associate Chief Counsel
      Civil Litigation Section
      D.E.A.

Dear Mrs. Richardson:

This letter is in response of your requested information in support of my claims for Breach of Contract 28 U.S.C. § 1491 and the Federal Tort Act Claim 28 U.S.C. § 2671 which arise from the Breach of Contract. You will find attach various documents relate to my work as Confidential Informant for the, Chicago Division DEA Group 44 / FBI CE-5 / CPOT (Task Force) which are:

1.    E-mails between me and FBI Special Agent William Roecker.

2.    OIA Admonishments with set lead 1: (action) from the Chicago Division to the Intelligence Directorate at Washington, DC (notification to HIMU of tier II OIA authorization for annual report to DOJ per AGGs

3.    Notice of the U.S. Immigration and Customs Enforcement, granting me "DEFERRED ACTION"

4.    The list of cases and persons arrested with my cooperation and services

5.    USM-129 Individual Custody/Detention Report naming me as "FEDERAL - MATERIAL WITNESS" the DEA was the arresting Agency.

In between February and May of 2008 while in detention under ICE supervision I did write to the DEA, FBI and the Illinois State Police offering my information and services in exchange for an "S VISA" (Informant Visa) to avoid deportation and to become Legal Permanent Resident

In response the DEA, FBI and the District Attorney Office for the Northern District of Illinois sent FBI Special Agent William Roecker and an Unknown Attorney from the DA office to debrief me at McHenry County Jail, Illinois at the meeting SA Roecker and the Attorney promised me to get me release from custody and help me with my "S VISA" and later to become U.S. Legal Permanent Resident.

I was assured that if I fully cooperate I would not be deported. I also was assured that my and my family safety would never be in jeopardy, I was explained how my name would be keep safe and that in case any goes wrong I would get new identity and help with relocation to a safe place, since August 6, 2010 I started receiving death threats because my participation and collaboration with Federal Agencies (FBI, DEA, FPO) which I reported to SA Roecker and reported in open Court at my detention hearing as Material Witness to Judge Denlow who told AUSA Steven Kubiatoswki to help to avoid my deportation and to investigate the threats, both

times I was denied any kind of help or support from the Unites States government, the only respond was that the I was not needed any more in totally disregard of my safety and well been.

On about March, 2011 I spoke to SA Roecker about my safety I asked him if I could make a police report to get protection against the retaliation, his answer was that if I went to the police I would get arrested and remove to Honduras, that he would pay me a lump sum of money for the last two cases I did work on, but he would need to turn me to ICE for Removal once again disregarding my safety and well been.

Most of the times I was pay $5,000.00 after any participation in a sting operation, for transporting drugs, picking money, and setting drugs buys. Also I did get reimburse at least one time $3,700.00 for expenses after a trip to California in which the Task Force seized 15 Kilograms of Cocaine that I transported in my semi-truck, this drugs belong to the Arellano Felix cartel, SA Robert Bella with the "DEA" was in charge and follow me from Los Angeles to Within, IN were I delivery the drugs and were the sting and seizure took place.

During my participation in various operations I was promised 25% of any amount of money seizure with my information and collaboration, in between December, 2009 and October 2010 two major cases took place, the First were 7 pounds of Meth and 200 pounds of marijuana were seized and 5 people were arrested only 4 were charge and one was released as "CW" (Helga Weiss "la Colombiana" Jose Diaz girlfriend). The Second case and subsequent spin operation the Task Force seized approximately 25 kilos of heroin and $750,000.00 and 18 people were Federally charge for which I haven't been pay any award, expenditures, time loss, reward or payment for information (PI) for which I am claiming $187,500.00 as a reward for the seized money, and $10,000.00 as payment for the two cases for my time and expenses that I incurred during the Investigation

As a consequence of the DEA, FBI and FPO (Task Force) denial of protection and breach of our implied in fact contract I lost my trucking company and all money invested in my semi-truck, after I expend 114 days in detention between ICE (30) and being a material witness (84 days) my semi-truck was repossessed by the owner which caused me to lost $7,000.00 in truck payments, approximated $6,500.00 in permits, license plates, insurance plus and estimated income loss of $14,000.00.

### Calculation of money claim

| | | |
|---|---|---|
| 1. | $187,500.00 | for unpaid reward of the $750,000.00 seized |
| 2. | $10,000.00 | for unpaid services as informant in the Diaz and Villalobos cases |
| 3. | $7,000.00 | for loss of my semi-truck |
| 4. | $6,000.00 | for loss of trucking company permits, Plates, and office equipment |
| 5. | $14,000.00 | for loss of income |
| 6. | $10,000,000.00 | for negligent infliction of emotional distress, mistreatment while in detention, intentional infliction of emotional distress, pain and suffering, loss of liberty |
| | $10,224,000.00 | |

In the case of my safety matter I ask the United States to review our agreement of non-deportation and safety as a matter of law, if it decided to remove me to Honduras the government would be breaching our Implied in fact contract and violating my constitutional rights under the 5th and 14th Amendments of the United States Constitution, also it would be in violation of the United Nation Convention Against Transnational Organized Crime "UNCATOC" and other various Statutes related to the protection of informants and witness 18 U.S.C. §§ 1512 and 1513

The government received and accepted the benefits; I acted in good faith; and the amount claimed represents the reasonable value of the benefit received. I am willing to settle this matter only if my safety is assured because I believe my safety is more important than the money.

**List of people arrested**

1. Jose Diaz
2. Alberto Negron
3. Rigoberto Arreola Cianca
4. Helga weiss
5. Seyra Villalobos
6. Antonio Negron
7. Moises Villalobos
8. Roberto Romero
9. Faustino Arellano
10. Adan Moreno
11. Rosa Fernandez
12. Leo Mercado
13. Richard Medina
14. Alejandro Reyes
15. Abrahan Mercado
16. Nicolas Gomez
17. Thomas Merced
18. Luis Lopez Martinez
19. Israel Hernandez
20. Johnny Fort
21. Francisco Llamas
22. Fernando Deleon
23. 2 unknown Defendants arrested after I delivery 10 Kilos on Sep. 18, 2009 (DEA El Paso)
24. Hector Ramos (Arrested in Florida for possession of firearm)
25. 2 unknown people arrested after I delivered the 15 kilos of cocaine in Within, IN

Sincerely,

JULIO A. VILLARS
Confidential Informant "GHOST TWO"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 10 CR 199 |
| v. | ) | |
| | ) | Honorable Ruben Castillo |
| JOSE DIAZ, et. al. | ) | |

## MOTION FOR MATERIAL WITNESS WARRANT

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully moves this Court to issue a material witness warrant, pursuant to Title 18, United States Code, Section 3144, for a material witness in the prosecution and potential trial of Jose Diaz, et al. for a violation of Title 21, United States Code, Sections 846. In support of this motion, the government incorporates the attached affidavit of Assistant United States Attorney Stephen A. Kubiatowski.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _s/Stephen A. Kubiatowski_
STEPHEN A. KUBIATOWSKI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-0589

Dated: October 27, 2010

STATE OF ILLINOIS       )
                              )
COUNTY OF COOK       )

## AFFIDAVIT

Stephen A. Kubiatowski, Assistant United States Attorney, being duly sworn, deposes and states as follows:

1.      I am one of the Assistant United States Attorneys who is assigned to handle *United States v. Diaz*, et al, No. 10 CR 199. This affidavit is submitted in support of the government's request that this Court issue a material witness warrant.

2.      Defendants Jose Diaz and Alberto Negron were indicted on April 7, 2010. The indictment alleges that, between February 25, 2010 and March 11, 2010, defendants and others conspired to knowingly and intentionally possess with intent to distribute and to distribute 50 grams or more of mixtures and substances containing methamphetamine, in violation of Title 21, United States Code, Section 846.

3.      Defendants were arraigned on April 14, 2010, and both pleaded not guilty. A trial date has not yet been set in this matter. Should either defendant proceed to trial, the government plans to call cooperating source Julio Villars-Salazar (DOB 8/6/1970; #A094325302) ("Villars"), whose testimony is a critical piece of the government's case. More specifically, Villars would testify that, acting under the direction and supervision of the Federal Bureau of Investigation and/or Drug Enforcement Administration, he posed as a buyer for one pound of methamphetamine, which transaction was negotiated through defendant Jose Diaz. This controlled transaction led the charge in this matter.

4.      Villars, who is in the United States illegally, is currently housed in the Dodge County Detention Facility in Juneau, Wisconsin, pending imminent deportation proceedings.

5.  As described above, Villars' testimony is a critical piece of the government's case against defendants. Once Villars is deported, it will be impracticable to secure her presence by subpoena, as he will no longer be within the court's jurisdiction. If Villars is rendered unavailable as a result of his deportation, the government may be unable to proceed to trial against defendants, and may be forced to dismiss the indictment against defendants. Accordingly, the government seeks to have Villars transferred to the custody of the U.S. Marshals Service in order to preserve his testimony for any potential trial of the defendants. *See* 18 U.S.C. § 3144.

STEPHEN A. KUBIATOWSKI
Assistant United States Attorney

SUBSCRIBED AND SWORN TO BEFORE ME

this 27 day of October, 2010.

NOTARY PUBLIC

OFFICIAL SEAL
CHERYL M. GUEST
Notary Public - State of Illinois
My Commission Expires Sep 01, 2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 10 CR 199 |
| v. | ) | |
| | ) | Honorable Ruben Castillo |
| JOSE DIAZ, et al. | ) | |

## WARRANT FOR ARREST OF WITNESS

To:    United States Marshal or any other duly authorized law enforcement officer

You are hereby commanded to arrest JULIO VILLARS-SALAZAR(DOB 8/6/1970; #A094325302) and to bring said individual forthwith before this Court, as a material witness, it having become impracticable to secure the individual's presence by subpoena.

You are further commanded to detain the individual in your custody until said individual is discharged by the Court.

Upon order of the Honorable Ruben Castillo, United States District Judge, Northern District of Illinois, this __ day of November, 2010

_____
Clerk



| Name: VILLARS-SALAZAR,JULIO | USMS Number: 42750-424 | |

## I. IDENTIFICATION DATA



**USMS NUMBER:** 42750-424      **NAME:** VILLARS-SALAZAR,JULIO

     **ADDRESS:** 1159 NORTH EASTEND AVE    **PHONE:**
                   ROUNDLAKE BEACH, IL 60073

        **DOB:** 08/06/1970    **AGE:** 40     **POB:** Honduras

| **SEX:** M | **RACE:** W | **HAIR:** BLK | **EYE:** BRO | **HEIGHT:** 5'03" | **WEIGHT:** 120 |

| **SSN:** | **FBI NBR:** 930228MB0 | **ALIEN NBR:** |

| ** SPECIAL CAUTIONS AND MEDICAL | REMARKS | SEPARATEE |
| --- | --- | --- |
| Separatee Warnings | | 22899-424 DIAZ,JOSE |
| Separatee Warnings | | 22902-424 NEGRON,ALBERTO |
| Separatee Warnings | | 40683-424 VALENCIA-RIVERA,SALVADOR |
| Separatee Warnings | | 22901-424 ARREOLA-CIANCA,RIGOBERTO |

| TB CLEARANCE STATUS | ASSESSMENT DATE | EXPIRED |
| --- | --- | --- |
| NOT CLEARED | | |

| DETAINER DATE | ACTIVE? | AGENCY | REMARK |
| --- | --- | --- | --- |
| 02/01/2011 | Y | IMMIGRATION & CUSTOMS ENFORECMENT | SA STODOLNY 800-973-2867 |

| PRISONER ALIAS | ALIAS REMARK |
| --- | --- |
| NONE | |

## II. CUSTODY INFORMATION

**Limited Official Use**
This Information is the Property of the U.S. Marshals Service and Shall Not be Publicly Released or Disseminated Without U.S. Marshals Service Authority.

Prepared on: 02/01/2011



| Name: VILLARS-SALAZAR,JULIO | USMS Number: 42750-424 | |
|---|---|---|

| CTR: 1 | CUSTODY START DATE: 11/10/2010 | END DATE: **/**/**** |
|---|---|---|

| CUSTODY STATUS | DISTRICT | START DATE: | END DATE | REMARK |
|---|---|---|---|---|
| WT-CASE-RESOLVE | 24 | 11/10/2010 | | |

| CTR | COURT CASE # | DISTRICT OFFICE | JUDGE | US ATTORNEY | DEFENSE ATTORNEY |
|---|---|---|---|---|---|
| 1A | 10CR199 | IL/N CHICAGO | | KUBIATOWSKI,STEPHEN | |

| CTR | ARREST DATE | ARRESTING AGENCY | | ARREST LOCATION | WARRANT NUMBER |
|---|---|---|---|---|---|
| 1A | 11/10/2010 | DRUG ENFORCEMENT ADMINISTRATION | | | |

| CTR | CODE | OFFENSE | REMARK | DISPOSITION |
|---|---|---|---|---|
| 1A | 1702 | Federal - Material Witness | | |

## III. COURT CASE STATUS HISTORY

| CTR | CC STATUS | START DATE | END DATE | REMARK |
|---|---|---|---|---|
| 1A | ARREST | 11/10/2010 | 11/10/2010 | |
| 1A | WT-TRIAL | 11/10/2010 | **/**/**** | |

## IV. CHRONOLOGICAL PRISONER HISTORY

| CTR: 1 | CUSTODY START DATE: 11/10/2010 | END DATE: **/**/**** |
|---|---|---|

| INST | INSTITUTION NAME | ADMIT | RELEASE | BOARDED | ACTION OR DISPOSITION |
|---|---|---|---|---|---|
| 7PT | Ozaukee Co Jail | 11/10/2010 | **/**/**** | 84 | |
| | | TOTAL DAYS BOARDED 84 (0 BND, 0 MED) | | | |

## V. MEDICAL CONDITION/TREATMENT HISTORY

| DATE SERVICE PROVIDED | VENDOR | SERVICE PROVIDED |
|---|---|---|
| **/**/**** | | |

*I did this delivery Drugs p/u in Barstow, CA IN Route to MANASSAS, VA*



## Chicago BreakingNewsCenter

POWERED BY WGNNEWS CLTV WGN Chicago Tribune

February 15, 2011
09:08:08:pm
in Chicago

Current Weather
City, state, or zip | GO
Get weather alerts
Get traffic alerts

Find a story: [ ] Search   Breaking News Video   Live WGN radio   Chicago Breaking Sports   Chica

CHICAGOSHOPPING BREAKING DEALS

CHICAGO LIVE! Chicago Live! at the Chicago Theater!
50% off - $20 tickets for only $10 each!

Fanshop:
Up to 40% off Chicago Blackhawks gear

More Breaking News:

◄ 3 charged in heroin overdose death...        Car-cloning ring smashed, FBI says... ►

# Whiting traffic stop yields big drug bust

March 24, 2009 1:39 PM | 2 Comments

Indiana State Police Monday night arrested two men after a traffic stop in Whiting in which more than 30 pounds of cocaine were found in the vehicle's back seat, the agency said today.



Cocaine and marijuana seized after a traffic stop in Whiting, Ind., Monday night. (Indiana State Police photo)

The traffic stop occurred at about 10:40 p.m. at Indianapolis Boulevard and South Lake Avenue in the northwest Indiana city when a state trooper noticed a license plate violation, according to a statement.

The two men in the car "became nervous and suspicious in their actions and stories," the statement said. During the stop, the trooper's police dog, Boss, smelled drugs in the vehicle, a 1996 Jeep SUV.

Troopers searched the vehicle and found 15 kilograms (about 33 pounds) of cocaine wrapped in clear plastic in a duffel bag on the back seat, the statement said. When they searched the home of one of the men, troopers discovered about 15 pounds of marijuana in a black trash bag.

The two men were each charged with dealing cocaine over three grams and are being held in jail. The driver was identified as Rafael Martinez-Arambula, 27, of Whiting, and the passenger as Jose Aragon, 29, of Highland, Calif.

Additional charges are pending, the statement said.

-- Staff report

Click here to sign up for breaking news, business and sports alerts.

Share this story:

Twitter    Facebook    Email

## RECOMMENDED FOR YOU

West Side man dies in police lockup (Chicago Breaking News)

3 charged in slaying of gangster-turned-developer (Chicago Breaking News)

Ohio turns down plea for mercy from slain man's son (Chicago Breaking News)

Two shot in Humboldt Park (Chicago Breaking News)

Blizzard restored to 3rd worst after heated debate (Chicago Breaking News)

## FROM AROUND THE WEB

What Happens If You Don't Rake Leaves? (eHow)

Iron Butterflies: How Remarkable Women Lead (OPEN Forum)

NFL Playoffs 2011: 25 Worst Playoff Performances of the Last 20 Years (Bleacher Report)

2011 NFL Mock Draft: Updated NFL Draft Top 50 Big Board (Bleacher Report)

Toddler Orphaned After Parents Drop Him at Preschool (The Stir By CafeMom)

[what's this]

ADS BY GOOGLE

Instant Tenant Background
Get Eviction, Criminal, Telecheck Immediate Access to Reports
american-apartment-owners-association...

Clear Criminal Record

ADVERTISEMENT

We've Crammed Chicago's
Largest Career Fair



Chicago Tribune

*Monday 23/3/09*

## MUGS IN THE NEWS

   

A teacher and sex        School bus driver DUI

## PHOTOS



In the news: Snowy commute

Click for RedEye's homicide map of Chicago

## MOST POPULAR POSTS:



340 viewing   Chicago Breaking News - Chicago Breaking News

44 viewing   Man found frozen in Rogers Park home - Chicago Breaking News

31 viewing   West Chicago murder conviction overturned - Chicago Breaking News

powered by chartbeat

## BREAKING NEWS TOOL KIT

Send in your news tips!



julio villars <juliovillars419@gmail.com>

# Fw:

1 message

**Roecker, William G. <William.Roecker@ic.fbi.gov>**          Thu, Sep 17, 2009 at 4:00 PM
To: "juliovillars419@gmail.com" <juliovillars419@gmail.com>

---

**From:** Roecker, William G. <William.G.Roecker@usdoj.gov>
**To:** Roecker, William G.
**Sent:** Thu Sep 17 16:57:40 2009
**Subject:**

Julio,
The name of the guy in Chicago is Bigotes, this is the guy who will be picking up the 10 packages,  and his push to talk # is 111*443*1808.  The Mexico guys know the guy in El Paso as "Carajo" he is the guy who sent you up from there.   Use your recorder to record the calls and Contact Bigotes tonight at about 8:00 p.m. and say you are in town , and will be ready to deliver tomorrow morning somewhere off of I-55 in the morning.

Don't go into detail about your truck, or Carjao, but if the guy wants to talk let him talk about himself. Talk about any "heat" these guys have, play the part of the delivery guy, and if you can get a description of vehicles or how many guys are coming. Tell them you want to do this quick in the morning, because you need to leave with a load and don't want to stick around. Tell them you will pick a place that is clear with no heat.

If you have any questions let me know.
Bill

---

I Help to Delivery 10 kilos of cocaine on my
Semi-Truck
2 People arrest