NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**JULIO VILLARS,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

2014-5124

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00363-EJD, Judge Edward J. Damich.

Decided: November 7, 2014

JULIO VILLARS, of Chicago, Illinois, pro se.

NATHANAEL B. YALE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were JOYCE R. BRANDA, Acting Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and STEVEN J. GILLINGHAM, Assistant Director.

Before TARANTO, BRYSON, and CHEN, *Circuit Judges.*

PER CURIAM.

Julio Villars sued the United States in the Court of Federal Claims, invoking the Tucker Act, 28 U.S.C. § 1491, for jurisdiction. His complaint alleges that he entered into a contract with federal law-enforcement authorities to serve as an informant for the government, in exchange for which the government promised him monetary compensation and assistance in obtaining lawful permanent residency. Alleging that the government did not live up to its end of the bargain, the complaint states causes of action for breach of contract. It also alleges an unlawful taking.

The Court of Federal Claims dismissed the contract claims based on two distinct but related premises: it construed the alleged contract as limited to a government promise of immigration assistance, and it construed the complaint as requesting no relief other than an "order [to] the Attorney General of the United States to issue" Mr. Villars a particular visa. *Villars v. United States*, No. 13-363 C, at 4–5 (June 4, 2014). On those bases, the court seemed to conclude that the contract did not carry the usual implied monetary remedy for breach and clearly concluded that the complaint in this case did not ask for monetary damages, but only for specific performance, as relief. *Id.* Accordingly, the court dismissed the contract claims for lack of subject-matter jurisdiction under the Tucker Act, which applies to a contract claim only if the contract carries monetary remedies for breach and if the claim seeks money damages. *Id.* The court also dismissed the takings claims for failure to state a claim upon which relief can be granted. *Id.* at 5–6.

We reverse the jurisdictional dismissal of the contract claim, rejecting both premises of the dismissal. Mr. Villars has not appealed the dismissal of the takings claim, so that dismissal stands.

BACKGROUND

The Court of Federal Claims expressly stated that it was granting the government's "motions to dismiss" under Rule 12(b) of the Rules of the Court of Federal Claims (RCFC). Accordingly, in reviewing the dismissal on appeal, we take the facts from the complaint. We read the complaint for what it fairly indicates and with the pro se status of Mr. Villars in mind. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At this stage, we must assume the truth of the alleged facts.

Mr. Villars is a citizen of Honduras who has lived in Chicago, Illinois, since 1995. In early 2008, Mr. Villars was arrested by the Bureau of Immigration and Customs Enforcement (ICE)—part of the federal government's Department of Homeland Security—and placed in detention to await removal to Honduras. He subsequently wrote two letters, one to the Federal Bureau of Investigation (FBI) and one to the Drug Enforcement Agency (DEA), offering to serve as an informant if the government would help him obtain an informant Green Card, or "S visa." *See* 8 U.S.C. § 1101(a)(15)(S) (granting the Attorney General authority to issue nonimmigrant visas to foreign nationals who assist federal or state law enforcement authorities).

A special agent from the FBI and an unnamed federal prosecutor came to see Mr. Villars and sought his assistance as an informant in targeting drug-trafficking organizations. The government agents assured him that he would not be removed to Honduras and entered into a "contractual agreement," under which they would (a) arrange for him to obtain lawful permanent residence, (b) reimburse him for expenses incurred during his work as an informant, (c) pay him for his work, at least $5,000 per case or a lump sum (perhaps a percentage) in case of a big seizure, and compensate him for any loss he incurred in his work, and (d) assist him to relocate and change his

identity in the event his safety was compromised. J.A. 5 (¶¶ 17, 19), 11–12 (¶ 56). Higher government officials provided authorization for or ratification of the agreement, and the government accepted Mr. Villars's services for more than two years, paying him some compensation, and adjusting his immigration status on three occasions to ensure that he remained in the United States. *Id.* at 2 (¶ 6), 6–7 (¶¶ 23-32).

From 2008 to 2010, and under the direction of federal authorities, Mr. Villars "used his trucking company to transport drugs and money, record incriminating conversations, ma[ke] drug buys, [and create] wire and video recordings." *Id.* at 3 (¶ 7). His work resulted in arrests of 30 suspects and the seizure of $750,000 in cash and large quantities of illegal drugs.

U.S. immigration authorities eventually revoked Mr. Villars's "deferred action" status, and apparently (the complaint suggests) he became at risk of deportation. The government detained him from mid-November 2010 to late-January 2011 as a material witness in a criminal prosecution of others. At some point, because of the status change, and perhaps because of his detention, Mr. Villars's truck was repossessed and his family evicted from their home.

In May 2013, Mr. Villars filed suit in the Court of Federal Claims, alleging an unlawful taking in one count and breach of contract in three counts.[1] As to the contract claims, the complaint alleges that "the government has breached the agreement[] by failing to compensate Mr. Villars for [his] services[ and] by failing to provide[] Mr. Villars with legal permanent residence." J.A. 13 (¶ 66).

---

[1] The Court of Federal Claims treated three counts of the complaint as contract claims, and the government has not disputed that treatment on this appeal.

The complaint "seek[s] compensation/damages and relief for" breach of contract. J.A. 3 (¶ 8). Two of the three claims treated as contract claims ask for actual, incidental, and consequential damages (J.A. 14 (¶¶ 69, 73)) and the third asks for exemplary or punitive damages of $1,000,000 (J.A. 16 (¶ 80)). The general prayer for relief seeks "damages in an amount to be determine at trial for [the alleged] violations [in] an amount not less than $2,250,000. J.A. 16 (¶ 82).

In September 2013, the government filed a motion seeking dismissal on the merits under RCFC 12(b)(6) or, in the alternative, summary judgment under RCFC 56. It did not question the court's jurisdiction. Regarding the contract claims, it argued that there was no actual or implied authority for, or proper ratification of, the alleged contract.

In late April 2014, the Court of Federal Claims raised a jurisdictional issue on its own. It stated that the complaint "appears to request that this Court order the Attorney General to issue an S visa which would enable Plaintiff to later become a legal permanent resident." J.A. 35. Saying that it "doubts it has jurisdiction to order such relief," the court ordered supplemental briefing on the issue. *Id.* Mr. Villars did not respond. *See Villars*, No. 13-363 C, at 3. The government responded in early May 2014 by filing, under RCFC 12(b)(1), a new motion to dismiss the contract claims for lack of subject-matter jurisdiction. J.A. 36–41.

The court dismissed the action on June 4, 2014. It held that it lacked jurisdiction over the contract claims, for the reasons advanced in the government's new jurisdictional motion. Citing Mr. Villars's statement in his complaint that his "only purpose" in entering the alleged contract was to secure lawful residency status, J.A. 11 (¶ 55), the court concluded (seemingly) that monetary remedies were not contemplated for the alleged contract and

(definitely) that the complaint sought only specific performance—in either event taking the contract claims outside the Tucker Act. *Villars*, No. 13-363 C, at 4–5. The court also held that the takings claim (over which jurisdiction was unquestioned) failed to state a claim on which relief could be granted. *Id.* at 5–6.

Mr. Villars timely appealed. He has presented only the contract claims on appeal. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review de novo the Court of Federal Claims' dismissal for lack of subject-matter jurisdiction and for failure to state a claim. *Gallo v. United States*, 529 F.3d 1345, 1348 (Fed. Cir. 2008).

The Tucker Act authorizes the court to hear claims against the United States for money damages. *See* 28 U.S.C. § 1491(a)(1). The statute "does not create any substantive right enforceable against the United States for money damages," a right that must be found outside the Tucker Act itself. *United States v. Testan*, 424 U.S. 392, 398 (1976). "The other source of law need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages," but only that it "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Navajo Nation*, 556 U.S. 287, 291 (2009) (internal quotation marks omitted); *see United States v. Mitchell*, 463 U.S. 206, 216–17 (1983); *Testan*, 424 U.S. at 400; *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1009 (Ct. Cl. 1967). And a contract claim presumptively meets that standard: "when a breach of contract claim is brought in the Court of Federal Claims under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). The claim must, however, seek money damages to come

within the Tucker Act, though not necessarily *only* money damages. *See Lee v. Thornton*, 420 U.S. 139, 140 (1975); *Gonzales & Gonzales Bond and Ins. Agency, Inc. v. Dep't of Homeland Security*, 490 F.3d 940, 943 (Fed. Cir. 2007).

Mr. Villars's contract claims meet the Tucker Act's standard. To begin with, the Court of Federal Claims incorrectly characterized the relief sought. The complaint expressly and repeatedly asks for monetary relief, as described *supra*. Even the part of the request that would cover compensation promised but not paid is a request for money damages. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 (2002) (" 'suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' ") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918–19 (1988) (Scalia, J., dissenting)). And the damages requests plainly are not limited to those amounts, covering actual, incidental, consequential, and exemplary or punitive damages.

That is enough to satisfy the relief-request part of the jurisdictional standard. It is hardly clear that Mr. Villars's complaint asks for an order directed to the Attorney General to issue him a visa, as the Court of Federal Claims concluded, or for any other non-monetary relief. But it does not matter if it does ask for such relief. The presence of such a nonmonetary-relief request would not alter the fact that the complaint expressly and repeatedly seeks money damages. The monetary-damages request suffices under the Tucker Act. *See Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) (affirming the Claims Court's jurisdiction over plaintiff's request for money damages under the Tucker Act even where court lacked authority to grant nonmonetary relief arising out of the same controversy); *Doe v. Civiletti*, 635 F.2d 88, 95 (2d Cir. 1980) (affirming trial court's jurisdiction over plain-

tiff's damages requests under Little Tucker Act even where court lacked jurisdiction to grant equitable relief arising from same breach claim); *Speed v. United States*, 97 Fed. Cl. 58, 68 (Fed. Cl. 2011) (denying government's motion to dismiss plaintiff's Tucker Act claims under RCFC 12(b)(1), but limiting her remedies to money damages, even though she requested both money damages and specific performance); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment. If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint.").

The Court of Federal Claims was also wrong to the extent that, beyond its reliance on what relief it saw requested in the complaint, it found no jurisdiction by deeming the underlying alleged contract not to be one that carried a monetary remedy for its breach. Mr. Villars is entitled to the presumption, as *Holmes* makes clear, that monetary relief is available for the alleged contract. And there is nothing in the contract as alleged that overcomes that presumption. Indeed, as recited *supra*, the alleged contract includes both monetary and non-monetary performance obligations by the government, including payment for services to be rendered and compensation for loss incurred in performing services. Neither the Court of Federal Claims nor the government has cited any authority for treating that kind of contract as an exception to the default rule that contracts carry monetary remedies for their breach.

In nevertheless concluding that the "contract never contemplated monetary damages," *Villars*, at 5, the Court of Federal Claims said nothing about the terms of the contract alleged in the complaint. Instead, it relied solely

on the complaint's statement that Mr. Villars's "only purpose" in entering the contract was to "reap the [i]mmigration benefits" from getting an S visa and "becom[ing a] legal permanent resident. J.A. 11 (¶ 55). *Villars*, No. 13-363 C, at 5. But the statement of an essential, even sole, motivation for entering into a contract cannot fairly be taken to erase the express allegations of what terms were part of the deal that was actually reached. There is no necessary contradiction. Especially given that the claimant is pro se, the complaint's express allegations of the terms of the contract must control the issue on a motion to dismiss.

CONCLUSION

The judgment of the Court of Federal Claims dismissing the contract claims for lack of jurisdiction is reversed.

**REVERSED**