# IN THE UNITED STATES COURT OF FEDERAL CLAIMS **FILED**

FEB - 2 2015

**U.S. COURT OF FEDERAL CLAIMS**

JULIO VILLARS

      Pro-se   Plaintiff,

v.

UNITED STATES OF AMERICA

      Defendant.

File No. 13-363C

Judge E. Damich

## FIRST AMENDED COMPLAINT

### I. JURISDICTION

1. Jurisdiction of this court is founded upon 28 U.S.C. § 1491 (a) (1) as this action arises from a contract between Plaintiff JULIO VILLARS and Defendant UNITED STATES OF AMERICA involving an amount in excess of $10,000.00.

2. This case involves Plaintiff Villars's contract with the U.S. Government to serve as a confidential human source (CHS)[1] to assist in the identification, investigation, and prosecution of criminal Drug Trafficking Organizations (DTO's) activities. While Plaintiff Villars performed his part of the agreement by infiltrating drug trafficking Organizations, serving as transport, buyer and middle man while acting as a "CHS", Defendant failed to uphold its end of the agreement to defend and protect Plaintiff Villars when criminal drug traffickers retaliated and continuing to harm him for the acts he performed as a "CHS" of the United States instead commencing removal proceedings against him. As a result, Plaintiff Villars was incarcerated for several months as material witness, lost his trucking company and is facing future harm

---

[1] CHS term use by FBI meaning ("Confidential Human Source")

1

## II. PARTIES

3. Plaintiff JULIO VILLARS is a natural person who is a citizen of Honduras and resides in the state of Illinois.

4. The Defendant is the United States of America (hereinafter "the United States"), who acted at all times material to this Complaint through its agencies, the United States Federal Bureau of Investigation ("hereinafter the FBI"), the United States Drug Enforcement ("hereinafter the DEA"), the Immigration and Customs Enforcement ("hereinafter ICE"), and the Department of Justice ("hereinafter the DOJ").

## III. FACTS

5. Plaintiff Villars is a Honduran citizen who had worked in the transportation business in the United States for the last seventh years, in 2008, the United States contracted with Plaintiff Villars to serve as a "CHS" in order to assist in the identification, investigation and prosecution of criminals involved in drug trafficking activities, Villars was registered as CHS on August 6, 2008 by the FBI

### A. Plaintiff Villars's Recruitment and Work for the United States Government from 2008 to 2010 under the 2008 Contract.

6. In 2008 while in Immigration detention, Plaintiff Villars met FBI Special Agent William Roecker and unknown Assistant united States Attorney from the Northern District of Illinois Eastern Division, the U.S. Officials debriefed Plaintiff Villars and after the debrief an record checks the government offered a contract through agents with authority to bind the United States

7. The U.S. officials promised Plaintiff Villars that, as a "CHS", he would receive monetary compensation for his services and would receive the protection of the United States.

8. In August 2008 following the meeting with U.S. Officials, Plaintiff Villars enter into

2

agreement with the U.S. Government ("the 2008 Contract"), Plaintiff Villars signed several documents but was not provided with copy, Plaintiff Villars was provided only with copy of the authorization for the Otherwise Illegal Activity ("The OIA"), even after Plaintiff asked to see and be afforded a full copy of the rest of the papers Officials for the U.S. Government affirmed to Plaintiff Villars that it was not need for him to have a full copy.

9. Plaintiff Villars accepted the offer to become a "CHS" for the FBI and DEA based on his desire to enjoy the promised financial benefits the protection and judicial assistance of the United States. Plaintiff Villars did not accept the offer in order to avoid or minimize potential criminal liability; he has committed no crime and his agreement with the FBI and DEA did not arise in the course of any investigation or as part of any plea agreement.

10. As the United States has acknowledged in the "Declaration of Special Agent William Roecker of the FBI" (Exhibit 1 of the Government Motion to Dismiss 12 (b) (6)[2]) and by affidavit in support for a Material Witness Warrant by AUSA Stephen A. Kubiatowski from the United States Attorney's Office for the Northern District of Illinois"), Plaintiff Villars "was authorized to participate as "CHS" by the Chicago Division DEA Group 44 / FBI CE-5 / CPOT and specifically by Special Agents with the FBI and DEA, with the consent and approval of the United States Attorney's Office for the Northern District of Illinois" and higher up officials of the FBI and DOJ in Washington D.C.

11. The Chicago Division DEA Group 44 / FBI CE-5 / CPOT Task Force operated out of the DEA Special Agent-in-Charge Office in Chicago, as 2008, the Group 44 was comprised of from federal, state and local agencies, including the FBI, the DEA, the Chicago Police Department, under the supervision of the U.S. Attorney's Office for the NDIL. The Group 44 targets Drug Trafficking Organizations ("DTO's) crimes through a myriad of investigative

---
[2] Declaration of FBI Special Agent William Roecker

3

tactics, from surveillance to court-authorized wire intercepts, undercover investigations, and other innovative techniques."

12. As the United States has acknowledged in a certified declaration and affidavit for in support of material witness warrant[3], Plaintiff Villars entered in agreement with the United States Government, under which Plaintiff Villars would serve as a "CHS" by impersonating a drug buyer, transport drugs, and as monies currier in the United States and providing information to the United States through the FBI, DEA and U.S. Attorney's Office for the NDIL to support the investigations, prosecution, and conviction of criminal activities related to drug trafficking.

13. The parties agreed that the United States would protect Plaintiff Villars and provide him judicial assistance in relation to the activities that he would perform as a "CHS."

14. The parties also agreed that as compensation for his services, Plaintiff Villars would receive payment for expenses, relocation, losses incurred in performing his activities as CHS and percentage of monies seized by the United States as a result of his work and information provided. All of the acts complained of were committed

by duly authorized agents of the United States Department of Justice "DOJ"

15. Plaintiff Villars entered into a contract with the United States based on the understanding that he would have the protection and assistance of the United States in relation to his work, and that "ICE" was fully informed and aware of the non-deportation agreement.

16. The U.S. Officials provided Plaintiff Villars with an "alias" ("Ghost Two") before signing the agreements. Plaintiff Villars used this alias to sing for every payment received.

17. From 2008 to 2010, in the role of a "CHS" for the United States, Plaintiff Villars worked in the United States specifically in the States of Illinois and California.

---

[3] Attached to Plaintiff Original Complaint

4

18. As the U.S. has acknowledged in a certified declaration, "During the period of 2008 through later 2010, Plaintiff Villars was acting as a "CHS", working under the direction of Special Agents of the FBI, DEA / Chicago Division DEA Group 44 / FBI CE-5 / CPOT. During that time, Plaintiff Villars was a drug courier, money courier, and drug buyer.

19. As the U.S. has acknowledged in a certified declaration, Plaintiff Villars worked as a "CHS" "under the direction of Agents with the Chicago Division DEA Group 44 / FBI CE-5 / CPOT" with the consent and approval of the United States Attorney's Office for the Northern District of Illinois.

20. As the U.S. has acknowledged in a certified declaration, in the course of his work as a "CHS", Plaintiff Villars "Provided information to federal agents regarding drug trafficking which was in the United States. He would arrange for the transportation, buy of drugs with the full supervision of the U.S. federal agents, once he delivery the drugs federal agents would intercept the traffickers arrested, prosecuted and convicted them.

21. As the United States has acknowledged in a certified declaration, in compensation for his services in the investigations the United States paid Plaintiff Villars based on his level of assistance and expenses, as consideration for his cooperation in the undercover investigations

22. As the United States has acknowledged in a certified declaration, Plaintiff Villars was paid by the FBI and the DEA. The "FBI and DEA knew of these reimbursements and acknowledged that those payments were the rightful compensation of Mr. Villars

23. As the United States has acknowledged in the "OIA" "Plaintiff Villars was required to report all of his activities to the United States Special Agents."

24 As the United States has acknowledged, case reports detailing Plaintiff's Villars role in the FBI, DEA / Chicago Division DEA Group 44 / FBI CE-5 / CPOT investigations do exist.

**B.**     **The United States' Failure to Respond to Plaintiff Villars Complaint of Criminal Retaliation and Imminent Removal to a Country where His Life would be in Jeopardy.**

25.     The 2008 Contract that the United States entered with Plaintiff Villars contemplated acts that he would perform at the request of the United States that are criminal in nature (e.g., drug trafficking)

26.     Despite the nature of these acts and the inherent risk to Plaintiff Villars in performing them, the United States failed to timely investigate the retaliatory life threats made to Plaintiff Villars since August 2010 by criminal defendants of the drug trafficking investigations and their associates in crime, further the United States instead of protecting Plaintiff Villars as promised, the U.S. through "ICE" has seek to remove him to a country where he would be easy prey of this DTO's

27.     As such, the United States was on notice no later than august 2010 that DTO's were retaliating against Plaintiff Villars for his participation in the investigations as "CHS" of the United States. Despite having such information, the United States failed to adopt prompt and effective measures to aid and protect him.

28.     On around October 13, 2010 the United States Immigration and Customs Services initiated removal proceeding against Plaintiff Villars despite the inherent risk of harm and life threatening that he would face if he is remove to Honduras in relation to his participation as "CHS" for the United States federal law enforcement agencies

29.     After Plaintiff Villars was taking into custody, he had made numerous attempts, both oral and written to obtain the proper protection. Plaintiff Villars had sought a "U Visa certification" from FBI and from the Federal District Court of Illinois Eastern Division to which the United States has opposed to let Plaintiff Villars receive the relief from the Court.

30. On October 27, 2010 after almost a month in "ICE" detention and despite that the United States had told Plaintiff Villars he was no longer needed as "CHS" a warrant for Material Witness for his arrest was requested and filed as public record, the information was provided to the criminal defendants on the Diaz Case *U.S. v. Jose Diaz et., al*. 10 CR 199 ND IL

31. On November 10, 2010 the United States transfer Plaintiff Villars from "ICE" custody to the U.S. Marshals service custody transferring him to Ozaukee County Jail, port Washington, WI Plaintiff Villars expend 116 days in detention subjected to mistreatment, abusive strip searches, solitary confinement, and verbal abuses from his jailers. See *Villars v Kubiatowski*, 12-cv-04586 ND IL

32. The United States despite of the knowledge of these abuses the United States failed to adopt prompt and effective measures to aid and protect Plaintiff Villars.

33. As a result of the United States detention of Plaintiff Villars, he lost his trucking company assets, savings, and personal belongings, his family was harmed when they were evicted from their home, Plaintiff losses could fairly be in the $40,000.00, not including loss wages since his arrest until the present day

C. **As a Result of the United States' Failure to Act, Plaintiff Villars Suffered Extensive Damages**

34. In 2008, the United States entered into a Contract with Plaintiff Villars.

35. As the United States acknowledged, Plaintiff Villars "fulfilled his agreement"

36. The United States, on the other hand, failed to comply with its obligations of good faith and fair dealing under the Contract.

37. As set for in Sections A and B, *supra*, Plaintiff Villars agreed to become a "CHS" for the United States only after he received affirmative assurances that the United States would provide him with protection and not to remove him from the United States. Both Plaintiff Villars

7

and the United States were fully aware the risk assume by Plaintiff Villars if the United States failed to protect him.

38. The United States' affirmative assurances of protection of plaintiff Villars were determinative in his decision to enter the Contract to become "CHS"; Plaintiff Villars became involved in drug trafficking operations at the request of the United States with the understanding that the United States would ensure that Plaintiff would be provided with protection, remuneration, and judicial assistance to avoid deportation

39. The United States owed Plaintiff Villars, as one of its "CHS," a duty of care, including upholding the spirit of the bargain between the parties, not willfully rendering an imperfect performance, and not failing to cooperate and not to hinder.

40. The United States breached its duties when it failed to protect Plaintiff Villars from criminal retaliation, mistreatment while detained as material witness, an effective and immediate procedure to address the imminent removal of Plaintiff Villars to Honduras in breach of the contract.

41. The United States' breach was ongoing throughout the time Plaintiff Villars was acting as 'CHS" and while he remained in the United States jails and his detention continued to wend its way through the United States judicial system, this breach is ongoing

42. The United States' breach continues today as Plaintiff Villars attempts, without any assistance from the United States, not to become a victim at the hands of criminal DTO's and to avoid his removal to a country were his life would be in jeopardy.

43. As a result of the United States Brach of contract, Plaintiff Villars suffered extensive damages, including spending almost fourth months in United States jail, the abuses he endured while in jail, the willfully disclosure of his participation as "CHS" by the United

States increasing Plaintiff Villars risk being harm or kill at the hands of DTO's

## CAUSE OF ACTION
## BREACH OF CONTRACT

44. Plaintiff Villars incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

45. The United States' 2008 offer to Plaintiff Villars through agents with authority to bind the United States of a Contract to serve as a "CHS" for the United States followed by Plaintiff Villars's mutual agreement to so assist the United States and Plaintiff Villars' subsequent acceptance and performance of his Contractual duties and obligations formed a binding Contract between Plaintiff Villars and the United States.

46. As the United States has acknowledged in a certified declaration and in affidavit in support for material warrant arrest, the "United States, through federal law enforcement agents, was aware of Plaintiff Villars' participation" as a "CHS" in the Chicago Division DEA Group 44 / FBI CE-5 / CPOT activities.

47. The United States breached its Contract with Plaintiff Villars when it failed to provide judicial assistance to Plaintiff Villars when he was a victim of criminal retaliation by DTO's for the actions he took on behalf of the United States while in the performance of his Contractual obligations.

48. The United States breached its Contract with Plaintiff Villars when it failed provide judicial assistance and/or to take reasonable and appropriate measures in a prompt and timely manner to assist Plaintiff Villars when he was arrested by the United States Immigration and Customs Enforcement and later failed to aid Plaintiff Villars to avoid mistreatment while in jail as material witness for the United States.

49. The United States continues to breach its Contract with Plaintiff Villars by failing in

its duty to take reasonable and appropriate measures in prompt and timely manner to provide judicial assistance to Plaintiff Villars in nullifying his removal order and to assure that Plaintiff Villars would not be put in harm ways by federal agents using their authority to increasing the risk of harm to Plaintiff Villars for the actions he took on behalf of the United States while in the performance of his Contractual obligations.

50. The United States continues to breach its contract with Plaintiff Villars by failing to compensate for the losses Plaintiff Villars incurred in performing his services, as result from the United States breach of legal duty

51. The United States continues to breach its contract with Plaintiff Villars by failing to compensate Plaintiff Villars for services rendered

52. The United States continues to breach its contract with Plaintiff Villars by intentionally failing to comply with the terms of the contract, this failure constitutes a bad faith and a material breach of the contract, as result Plaintiff has suffered substantial injury, and is entitled to actual, incidental and consequential damages, including cost and fees

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Villars respectfully prays this Court for the following relief:

(a) Enter judgment in favor of Plaintiff Villars and against the United States on all Counts of the Complaint;

(b) The actions of the Defendant complained of herein be adjudicated, decreed, and declared a breach of Defendant obligations under the contract, breach of the covenant of good faith and fair dealing; and

(c) Award Plaintiff Villars Damages in the amount of Ten Million Dollars ($10 Million) together with interest thereon, and the costs of this suit.

(d) Such other relief as the Court deems just and equitable

Respectfully submitted this 21 day of January 2015

_____
JULIO VILLARS Plaintiff Pro-se
2307 North Mason #2
Chicago, Illinois 60639
juliovillars419@gmail.com
Phone: 773-469-6474